UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DONNIE LEROY LINAM, ) | |
| as administrator of the estate of decedent and ) | |
| next friend of THOMAS EARL JONES, ) | |
| ) | |
| Plaintiff ) | |
| ) | Case No. 1:08-CV-106 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| HAMILTON COUNTY GOVERNMENT, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Before the Court are two motions for summary judgment. The first has been filed by Defendants Eston Pyle ("Pyle"), Nathan Sampley ("Sampley"), and Denise Short ("Short") (collectively, "Officers") (Court File No. 30). The second has been filed by Defendants Hamilton County Government ("Hamilton County") and former Sheriff Billy Long ("Long") (Court File No. 32). Each motion bears an accompanying memorandum in support (Court File Nos. 31, 33). Plaintiff Donnie Leroy Linam ("Plaintiff") has filed a combined response (Court File No. 44), to which Hamilton County and Long have replied (Court File No. 66). The Court has considered these filings, along with accompanying affidavits and other discovery materials, in reaching its decision.

For the following reasons, the Court will **GRANT** the motion filed by Hamilton County and Long, and will **GRANT IN PART** and **DENY IN PART** the motion for summary judgment filed by, Pyle, Sampley and Short.

### I. FACTS AND PROCEDURAL HISTORY

On May 7, 2007, Deputy Sheriff Paul Maupin ("Maupin") responded to a vehicle theft

complaint by Justin Morgan ("Morgan") who indicated his 1999 white Jeep Cherokee had been stolen (Court File No. 34 ("Maupin Aff."), ¶¶ 2-4). Morgan had identified Tommy Jones ("Jones") as a possible suspect (*id.* at ¶ 3 and Ex. A). An advisement was received over the Sheriff's Department radio that Jones was known to "fight the police, resist arrest and run from the police" (Court File No. 35 ("Short Aff."), ¶ 3). Morgan signed an auto theft affidavit and agreed to prosecute (Maupin Aff., Ex. A, p. 3). While Maupin was taking the report, Short was on a medical call and noted a vehicle matching the description, which she pursued (Short Aff. ¶ 3). Short discovered the stolen vehicle outside the property of William and Kristy Hinshaw and, after verifying the tag through dispatch as stolen, approached Jones (*id.* at ¶ 4).

Jones got out of his vehicle and was not responding to Short's commands to get on the ground with his hands out (Short Aff. at ¶ 4; Court File No. 61 ("W. Hinshaw Aff."), p. 2; Court File No. 53 (K. Hinshaw Aff."), p. 2). Short had her gun drawn and a flashlight shining on Jones (*id.*). William Hinshaw then went outside to offer assistance, which Short declined, and Kristy Hinshaw called 911 (K. Hinshaw Aff. p. 2, W. Hinshaw Aff. pp. 2-3). Jones continued to approach Short in an aggressive manner, pulling up his shirt, smacking his chest with both hands and saying "You are going to have to shoot me" (*id.*). Jones went back to his vehicle and took off down Dolly Pond Road and Short followed (*id.*; Short Aff. ¶ 4).

Pyle and Sampley both heard the dispatch report of a 911 caller reporting a disturbance from the same location where they knew Short had stopped Jones. They both were familiar with Jones and knew he often resisted arrest (Court File No. 37 ("Pyle Aff."), ¶¶ 3-4; Court File No. 36 ("Sampley Aff."), ¶ 3). Short followed Jones until he pulled into a driveway at approximately the 11000 block of Dolly Pond Road and stopped (Short Aff. ¶ 5). Sampley had notified dispatch he was

2

approaching Short's location. Short waited until Officer Sampley arrived and then they both approached the vehicle (*id.* at ¶¶ 6-7). Short and Sampley gave verbal commands ordering Jones out of the vehicle. Jones got out of the vehicle with a beer and a cigarette, refused to get on the ground, and stated he was not "going back" and "you will just have to kill me" (Short Aff. ¶ 7; Sampley Aff. ¶ 6). Jones sat back down inside his car and Sampley advised Short to get back and take cover (Sampley Aff. ¶ 7; Short Aff. ¶ 7). At this point, Pyle arrived on the scene and told Sampley to unlock the passenger side of Short's vehicle to use the door for cover (Pyle Aff. ¶ 6).

Sampley was at the driver's side of Short's vehicle, Pyle was at the passenger side, and Short was off in the grass near a tree when Jones came out of the Jeep with a cigarette and a knife (Pyle Aff. ¶ 6; Sampley Aff. ¶ 9; Short Aff. ¶¶ 7-8). Jones began to aggressively approach Pyle and Sampley with the knife held out in front of him while they repeatedly ordered Jones to drop his weapon (Pyle Aff. ¶ 7, Sampley Aff. ¶ 10, Short Aff. ¶ 8). Short commanded Jones to drop his knife, after which he turned his attention to Short and advanced on her aggressively (*id.*). When Jones was within a few feet of Short, all three officers fired their weapons. Jones fell to the ground with the knife in one hand a cigarette in his other (Sampley Aff. ¶ 11). Pyle notified dispatch and requested an ambulance (Pyle Aff. ¶7). Short gave her gloves to Pyle and he and Sampley went to check Jones. Sampley kicked the knife out of Jones's hand (Sampley Aff. ¶ 11, Short Aff. ¶ 8, Pyle Aff. ¶ 7). The fire department pulled up and one of the Emergency Medical Technicians reported they believed Jones to be dead.

Plaintiff disputes the facts described in the previous paragraph as they conflict with the testimony of Kenneth Wayne Hafley ("Hafley"), the owner of the property where Jones was shot.

3

Hafley arrived at his home to discover three police cars in his driveway and another police car about 50 feet away (Court File No. 44, Ex. 1("Hafley Aff.") ¶ 4). He heard the gunshots and saw flashes as he pulled up and saw a female officer shooting Jones as he was climbing a fence (*id*. at ¶ 6). Hafley asserts Jones fell and Hafley heard three or four more gunshots after two male officers pulled Jones off the fence (*id*.). At this point, two male officers instructed Hafley to leave (*id*.).

Later the same evening, Hafley was approached at his home by Long, who apologized for keeping Hafley from his house and offered to help Hafley apply for a job (*id*. at ¶¶ 8-9). Hafley was never interviewed by the police about the shooting. About four to five days after the shooting, two officers, who did not identify themselves, drove up to Hafley's house and suggested to Hafley (who was in his front yard) that he did not see "anything" (*id*. at ¶¶ 12-17). There is no mention of Hafley in the affidavits filed by Short, Pyle, or Sampley.

Lieutenant William Johnson ("Johnson") completed an internal affairs investigation of the shooting and concluded the use of deadly force was justified, lawful, and proper (Court File Nos. 45, 46). The autopsy report revealed Jones died due to multiple gunshot wounds from seven bullets shot from a range of about two feet or greater (Court File No. 50, p. 1). Six of the seven wounds were inflicted from behind (*id*. at pp. 2, 9). The Tennessee Bureau of Investigation ("TBI") conducted a blood test on Jones, which indicated Jones had .33% of Ethyl Alcohol in his system at the time of the event (Court File No. 50, p. 10). Neither the personal property report nor the "HCSO Evidence/Property receipts" document references a knife (Court File No. 55; Court File No. 46). However, a photograph of a knife was allegedly part of the report (Court File No. 44, p. 6; Court File No. 57). According to Johnson's report, the in-car video tapes did not provide any "significant, additional information" (Court File No. 45, p. 3).

4

Sharon Linam ("Linam"), Jones's aunt and Plaintiff's wife, first contacted Johnson in May 25, 2007, requesting information on Jones (Court File No. 44-2 ("Linam Aff."), ¶¶ 1-3). She was told Johnson's investigation would not begin until after the TBI completed theirs and if she wanted to see the knife or any video from the police cars, the TBI would need to approve it (*id*. at ¶¶ 3-4). Johnson indicated the knife was either in police property or in a crime lab in Nashville (*id*. at ¶ 5). Linam again spoke with Johnson in January 2008 and was told the report was still not ready, and all she could have was the car theft report (*id*. at ¶ 7). Linam tried numerous times to get the car theft report and eventually gave up trying to obtain any records as she was told she could not have a copy as it was still under investigation (*id*. at ¶ 8).

Plaintiff brought this suit in May 2008 under 42 U.S.C. §§ 1983 and 1985. The complaint alleges Fourth and Fourteenth Amendment violations because the officers used excessive force and deprived Jones of due process of law, conspiracy to violate Jones's civil rights in violation of 42 U.S.C. § 1985; a municipal liability claim against Hamilton County stemming from their alleged failure to properly train their employees as to the use of force, preserving crime scenes, and offering incentives to witnesses. Plaintiff also alleged related state-law tort claims for negligence, wrongful death, assault and battery, and intentional infliction of emotional distress.

All defendants have now moved for summary judgment on all counts and assert they are entitled to judgment as a matter of law.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any

material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

**III.    DISCUSSION**

    **A.    Claims under 42 U.S.C. § 1983**

Plaintiff sued under 42 U.S.C. § 1983 for alleged violations of Jones's rights secured to him by the Fourth and Fourteenth Amendments of the United States Constitution. To state a claim under 42 U.S.C. § 1983, the plaintiff must set forth "facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir.

6

2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). A suit against a municipality involves a two-prong inquiry. *Cash v. Hamilton County Dep't of Adult Prob.,* 388 F.3d 539, 542 (6th Cir. 2004). The court must determine whether the plaintiff has been deprived of a constitutional right and whether the municipality is responsible for the violation. *Id.*

A suit against an official in his official capacity is construed as a suit against the governmental entity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 68 (1989). Therefore, the claims against Officers Short, Pyle, Sampley, and former Sheriff Long in their official capacities are construed as claims against Hamilton County. The doctrine of respondeat superior does not apply to § 1983 lawsuits. *Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005). Plaintiff does not contend Hamilton County is liable on a respondeat superior basis, rather seeks to impose direct liability based on *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Inadequacy of police training can serve as the basis for liability under § 1983 only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

The Court will address each of Plaintiff's § 1983 claims in turn.

**1.    Officers Short, Pyle and Sampley**

Plaintiff argues the force used by Officers Short, Pyle, and Sampley was excessive and amounted to unlawful deadly force. Defendants argue their use of deadly force was reasonable under the circumstances and they are entitled to judgment as a matter of law. The officers cite the fact Jones had a knife, was refusing commands, and was aggressively advancing on Short. Plaintiff relies on Jones's high blood alcohol level, his holding a cigarette, and Hafley's testimony describing Jones's attempt to climb a fence when the gunshots occurred.

Excessive force claims are properly analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Whether or not excessive force is reasonable requires balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 47 U.S. 1, 8 (1985). Determining reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Garner*, 471 U.S. at 8-9). "Such reasonableness must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The Sixth Circuit has made clear that "the use of deadly force is constitutionally reasonable if the officer has probable cause to believe that the suspect poses a serious threat of physical harm either to the officer or to others." *Sample v. Bailey*, 409 F.3d 689, 697 (6th Cir. 2005).

Plaintiff has alleged sufficient facts to support a jury determination excessive force was used. Viewing the facts in the light most favorably to Plaintiff, Jones was highly intoxicated, holding a lit cigarette and attempting to escape when he was shot seven times. Further, with the exception of a photo, there is a lack of documentation as to the knife. Hafley's testimony describes a materially different version of events than the officers' statements and, if credited, would support a finding Jones's constitutional rights were violated. The use of deadly force by three officers to stop an armed man even one intoxicated while he is attempting to climb a fence presents a jury question as to whether a constitutional violation occurred. *See Brousseau v. Haugen*, 543 U.S. 194, 197 (2004) ("it is unreasonable for an officer to seize an unarmed, nondangerous suspect by shooting him

8

dead.")(citing *Garner*, 471 U.S. 1, 11); *Garner*, 471 U.S. at 9 ("only in rare instances may an officer seize a suspect by use of deadly force."); *cf Chappell v. City of Cleveland*, 585 F.3d 901, 1192 (6th Cir. 2009) (Uncontradicted evidence that deceased came out of closet in dimly lit room with knife in hand, refused officers command to drop the knife, and approached officers was sufficient to demonstrate reasonableness for officers claim of qualified immunity when deceased shot ten times).

Defendant officers have asserted the defense of qualified immunity. This defense shields government officials performing discretionary functions where their "conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). There are two parts to the qualified immunity analysis: (1) whether, viewing the facts in the light most favorable to the plaintiff, there was a violation of the plaintiff's constitutional right(s), and (2) whether the right was clearly established to a reasonable person, such that its violation would be objectively unreasonable. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). The district court may begin its analysis with either of the two parts. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). If either of the prongs is answered in the negative, the individual officer is entitled to qualified immunity. *See Saucier*, 533 U.S. at 201. The use of deadly force to seize an unarmed, non-dangerous suspect from attempting to escape constitutes a clear constitutional violation. *Garner*, 471 U.S. at 11. Because Plaintiff presents a conflicting version of facts, which if proven, would establish violation of clearly established constitutional rights, the Court concludes the officers are not entitled to summary judgment on the issue of qualified immunity.

The Court concludes the facts viewed in the light most favorable to the plaintiff could support a finding a constitutional violation occurred. The violation is of a clearly established right

9

to be free from the use of deadly force and thus qualified immunity would not apply. Accordingly, the Court denies the Officers' summary judgment on Plaintiff's claims of excessive force.

### 2. Hamilton County

Plaintiff alleges Hamilton County is liable based on its failure to train its officers in use of force, preservation of crime scenes, and prohibition on offering incentives to witnesses when performing a law enforcement function. Long's actions could be evidence of a policy, but they are not attributable to Hamilton County.

In order for Hamilton County to be liable, there must be a direct causal link between a municipal policy or custom and the alleged constitutional violation. *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Plaintiff must demonstrate "the unconstitutional policy or custom existed, that the policy or custom was connected to the county, and that the policy or custom caused his constitutional violation." *Napier v. Madison County, Ky.*, 238 F.3d 739, 743 (6th Cir. 2001). The Supreme Court has held municipalities may constitute "persons" acting under color of state law subject to § 1983 liability. *Monell*, 436 U.S. 658. There are two important questions to answer in analyzing § 1983 claims against municipalities. First, was the plaintiff's harm caused by a constitutional violation? If yes, was the city responsible for that violation? *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *accord Cash v. Hamilton County Dep't of Adult Prob.*, 388 F.3d 539, 542 (6th Cir. 2004). "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible." *Monell*, 436 U.S. at 694; *accord Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005).

To demonstrate the existence of an illegal municipal policy or custom, a plaintiff may use

10

at least four sources: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). To prove a policy's existence, the plaintiff must demonstrate deliberate indifference by the local government—a deliberate or conscious choice to fail to train its employees. *Harris*, 489 U.S. at 388–89. As another means to establish liability, a plaintiff may prove a municipality had a custom in place which caused a constitutional violation, even if the custom was not formally sanctioned. *Pembauer v. City of Cincinnati*, 475 U.S. 469, 482 n.10 (1986). "A municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice." *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004).

Plaintiff points to no official policy or custom by Hamilton County to support liability. Plaintiff's brief argues the wrongful conduct of Long "most likely acted to intimidate the only civilian eyewitness" and "this same sheriff directed Johnson to disregard Hafley's involvement." (Court File No. 44, p. 14). Even if Long had final policy-making authority as sheriff, not all actions of a policymaker equate to municipal action, only when an action "inflicts the injury" alleged by Plaintiff. *Monell*, 436 U.S. at 694. Plaintiff alleges an injury due to excessive force, and Long's offering an incentive to a potential witness is not a "moving force" behind the Plaintiff's injury sufficient to impose municipal liability. *Brown*, 520 U.S. at 405. Plaintiff must adduce specific facts in support of his claim to establish a custom or policy and these conclusive allegations are insufficient to hold Hamilton County liable. *Warren v. Shelby County, Tenn.*, 191 F. Supp. 2d 980,

11

984 (W.D. Tenn. 2001). Plaintiff has failed to demonstrate an unconstitutional policy or custom existed that was connected to the county and that the custom caused his constitutional violation. *Napier,* 238 F.3d at 743.

The Court concludes the facts viewed in the light most favorable to the plaintiff could not support a jury verdict in favor of the plaintiff on the § 1983 claims against Hamilton County. Therefore, the Court will grant summary judgment in favor of Hamilton County.

### 3. Former Sheriff Long

Plaintiff's § 1983 allegation against Long is not entirely clear from the filings before the Court. Plaintiff alleges Long was at the scene of the shooting and spoke with Hafley afterwards. During this conversation, Long offered Hafley a job. Later, two identified police officers spoke with Hafley and suggested he "didn't see anything" (Hafley Aff. at ¶ 17). Based on these allegations, the Court construes Plaintiff's civil rights violation claim against Long as a violation of Plaintiff's right to a fair trial.

Section 1983 actions are read against the background of tort liability "that makes a man responsible for the natural consequences of his actions." *Malley v. Briggs*, 475 U.S. 335, 344 n.7 (1986) (citing *Monroe v. Pape*, 365 U.S. 167, 187 (1961)). Even if all facts alleged by Plaintiff are true and Long did try to encourage a witness from testifying, there is a lack of causation. Hafley has provided an affidavit detailing the events of the shooting and is listed as a witness for Plaintiff's trial (Court File No. 64). Therefore, even if Long had been attempting to violate Plaintiff's right to a fair trial, the alleged conduct did not cause a constitutional violation to occur.

The Court finds Long's actions, viewed in the light most favorable to Plaintiff, did not result in a constitutional violation and therefore summary judgment is appropriate as to the § 1983 claim

against Long.

B. **Conspiracy under Section 1985**

Plaintiff claims Defendants' failure to identify the officers involved was a conspiracy to prevent Plaintiff from seeking redress in court prior to the statute of limitations. Plaintiff did not specifically brief this issue in response to summary judgment. The allegations in the complaint refer to Johnson's withholding information regarding the investigation and Long's intimidation of Hafley as a basis for conspiracy. Defendants argue Plaintiff cannot prove the essential elements of this claim, namely that the conspiracy must be motivated by racial, or other class-based invidiously discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971); *Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005).

It is unclear which subsection of § 1985 under which Plaintiff is proceeding, however, Plaintiff has failed to allege facts to support a claim of conspiracy under either § 1985 (2) or (3). To state a claim for conspiracy under § 1985, a plaintiff must allege four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828 (1983).

Conspiracy claims must be pleaded "with some degree of specificity" and "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Guiterrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Conspiracy claims under § 1985 must be pleaded with the same specificity as conspiracy claims under § 1983. *Jaco v.*

13

*Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984). A district court is entitled to dismiss claims of conspiracy where the plaintiff fails to allege all elements, including an agreement or single plan. *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Mettetal v. Vanderbilt Univ., Legal Dep't.*, 147 F. App'x 577, 585 (6th Cir. 2005).

Plaintiff has not alleged the existence of an agreement or meeting of the minds between the defendants and therefore the Court will grant both motions for summary judgment on this claim.

### C. State Law Claims

#### 1. Negligence

Plaintiff has asserted state law claims against the individual officers as well as Hamilton County. Defendants argue Plaintiff's state law negligence claims must fail because the individual Defendants are entitled to immunity under state statutes, and because Hamilton County did not engage in conduct rising to the level of negligence.

Because Hamilton County is a government entity, the Tennessee Governmental Tort Liability Act ("GTLA") determines whether it is immune from suit. Tenn. Code Ann. § 29-20-201(a) ("all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of their functions"). Immunity from suit is waived for "injury proximately caused by a negligent act or omission of any employee within the scope of his employment" unless the injury arises out of enumerated exceptions. *Id.* § 29-20-205. A governmental entity retains immunity if the injury arises out of "false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of privacy, or civil rights."

14

*Id.* § 29-20-205(2). In order to hold a governmental entity liable for damages, the court "must first determine that the employee's or employees' act or acts were negligent and the proximate cause of plaintiff's injury, that the employee or employees acted within the scope of their employment and that none of the exceptions listed in § 29-20-205 are applicable." *Id.* § 29-20-310(a).

Plaintiff does not allege negligent conduct by any of the officers. Claims against Short, Pyle and Sampley stem from an unlawful use of deadly force. An allegation of excessive force makes a claim for battery or assault, but does not make out a claim for negligence. *City of Mason v. Banks*, 581 S.W.2d 621, 626 (Tenn. 1979). Plaintiff's claim against Long alleges intimidating or offering incentives to a witness. Long's alleged conduct is a volitional and conscious act, and would also not constitute negligence. Accordingly, summary judgment is appropriate on negligence claims asserted against Hamilton County.

Plaintiff's negligence claims against Pyle, Sampley, Short and Long in their individual capacities are barred by the GTLA. Pursuant to Tenn. Code Ann. § 29-20-310 (b), governmental employees are immune to claims for damages where the governmental entity has waived its immunity from such suits. GTLA has waived governmental entities' immunity from suits where injuries are proximately caused by the negligent acts of employees within the scope of their employment. Tenn. Code. Ann. § 29-20-205 (a). Accordingly, Plaintiff's negligence claims against the individual officers will be dismissed.

For the foregoing reasons, the Court will grant both motions for summary judgment and will dismiss the state law negligence claims.

### 2. Wrongful Death

Plaintiff has asserted state law claims for wrongful death stemming from the same facts

15

giving rise to the § 1983 claims of excessive force. Pursuant to GTLA, Hamilton County is immune from suit on this claim. *See* Tenn. Code Ann. § 29-20-201 (a). Because Plaintiff has raised material facts in dispute regarding the events giving rise to Jones's death, summary judgment is inappropriate with regard to Officers Short, Long, and Sampley.

Therefore, the Court will grant Hamilton County's motion for summary judgment on Plaintiff's wrongful death claim. Plaintiff's claim of wrongful death against Short, Sampley, and Pyle will proceed to trial.

### 3. Assault/ Battery

Plaintiff has asserted claims of assault and battery against Officers Short, Pyle, and Sampley, as well as against Hamilton County. Based on the Court's determination issues of fact precluded summary judgment on the issue of excessive force, the officers are not entitled to judgment as a matter of law on these state claims. Therefore, the Court will deny the Officers' motions for summary judgment on the state law claims of assault and battery.

Governmental entities can be held liable for intentional torts not specifically enumerated in § 29-20-205(2) where a negligent act proximately causes injury to the plaintiff. *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 81 (Tenn. 2001); *McNabb v. City of Memphis*, No. 03-2334, 2004 WL 2384958, *4 (W.D. Tenn. March 8, 2004) ("The decision in *Limbaugh* does not allow a governmental entity to be sued directly for the intentional torts of assault and battery; it merely removed governmental immunity for these intentional torts that are caused by a negligent act or omission of the governmental entity."). Thus, in order for Hamilton County to be held liable for assault and battery, Plaintiff must demonstrate a negligent act or omission leading to the intentional tort. Based on the record, Plaintiff does not allege facts demonstrating Hamilton County acted

16

negligently. Since there is no dispute as to Hamilton County's actions, summary judgment is appropriate for this claim.

Accordingly, the Court will grant Hamilton County's motion for summary judgment and will dismiss Plaintiff's claims of assault and battery against the county. The Court will deny summary judgment on claims of assault and battery against Pyle, Short, and Sampley.

### 4. Intentional Infliction of Emotional Distress

Plaintiff has not specifically alleged how the officers or Hamilton County intentionally inflicted emotional distress. To establish a cause of action for this tort, Plaintiff must establish intentional or reckless conduct that is so outrageous it is not tolerated by civilized society and this conduct must result in serious mental injury. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). A reasonable jury could not find the officers' intent in shooting Jones was to cause him emotional distress. Further, Plaintiff has not alleged any severe emotional distress by Jones prior to his death. Therefore, the Court will grant Defendants' motions for summary judgment on this claim and Plaintiff's claims of intentional infliction of emotional distress will be dismissed.

## IV. CONCLUSION

Having carefully considered the parties' submissions and evidence in the record, and for the reasons stated above, the Court will take the following actions:

The Court will **GRANT** Hamilton County and Long's motion for summary judgment and will **DISMISS** Defendants Hamilton County and Long from the case (Court File No. 32).

The Court will **GRANT IN PART** and **DENY IN PART** the motion for summary judgment filed by Officers Short, Pyle, and Sampley (Court File No. 30). The Court will **GRANT**

summary judgment on Plaintiff's § 1985 and state law claims of negligence and intentional infliction of emotional distress. The Court will **DENY** summary judgment on Plaintiff's § 1983 and remaining state law claims of wrongful death, assault, and battery.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**